IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS INSETTA AND ANN INSETTA, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No.  14-1890 |
| THE FIRST LIBERTY INSURANCE CORPORATION, | : : : : : | |
| Defendant. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                   **MARCH 20, 2015**

Presently before this Court is Defendant, The First Liberty Insurance Corporation's, Motion for Partial Summary Judgment, the Response in Opposition filed by Plaintiffs, Louis and Ann Insetta, and Defendant's Reply thereto.  For the reasons set forth below, Defendant's Motion is granted.

**I.        FACTS**

On November 14, 2012, Plaintiff, Louis Insetta ("Plaintiff"), was injured in an automobile accident when another motorist (the "tortfeasor") crashed into the rear of his vehicle. Compl. ¶ 4.  As a result of the accident, Plaintiff complains of suffering "serious injuries to . . . his head, neck, shoulders and back, paresthesia of both arms, an exacerbation of bilateral carpel syndrome, and a concussion with post-concussive syndrome which produced headaches, impaired vision, nausea, dizziness, tinnitus, insomnia, an inability to concentrate, irritability and

anxiety." Id. ¶ 5. Due to these injuries, Plaintiff alleges monetary injury in the form of current and possible future medical expenses and lost wages. Id. ¶¶ 6-8.

At the time of the accident, the tortfeasor was insured by Erie Insurance Company with a bodily injury protection limit in the amount of $15,000 per person. Id. ¶ 11. Although Plaintiff settled for this amount, it was not adequate to cover his injuries from the accident. Id. ¶¶ 11-12. Plaintiff was covered by an automobile insurance policy (the "Policy") issued by Defendant, First Liberty Insurance Corporation ("Defendant"). Id. ¶ 13. Under the Policy, Plaintiff paid more for underinsured motorist benefits ("UIM") and full tort coverage. Id. ¶¶ 18, 20. In October of 2013, Plaintiff advised Defendant of his intent to pursue a claim under the UIM provision in the Policy for damages resulting from the accident. Id. ¶ 14. Specifically, the UIM portion of the Policy states that Defendant "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of bodily injury: (1) sustained by an 'insured,' and (2) caused by an accident." Id. ¶ 16. On or about October 28, 2013, Plaintiff, through his counsel, made a written demand to Defendant for the tender of his $100,000 UIM policy limit. Id. ¶ 21. In order to justify and assist Defendant in evaluating the claim, Plaintiff provided Defendant with copies of his medical records and economic data showing wage losses due to the accident. Id. ¶ 22.

Upon a review of these documents, Ms. Anne Palmer ("Ms. Palmer"), a claims adjuster employed by Defendant, was able to place a monetary value on Plaintiff's claim. (Def.'s Mot. for Part. Summ. J. (Ex. D Palmer Dep. 16:19, Aug. 15, 2014.)) This valuation included an acceptance of the full disability time/wage loss sought by Plaintiff, and took into account the $15,000 already paid to Plaintiff by the tortfeasor's insurance. (Id. at 94:18; 101:5.) On or about February 25, 2012, Defendant made a verbal offer of $34,000 to Plaintiff to settle his UIM

claim.[1]  Compl. ¶ 23.  Plaintiffs, subsequently, rejected Defendant's settlement offer.[2]  Id. ¶ 24.

On March 3, 2014, Plaintiff and his wife, Ann Insetta (collectively "Plaintiffs"), filed a civil action against Defendant in the Court of Common Pleas of Bucks County, Pennsylvania.  See Compl.  In this suit, Plaintiffs allege claims for breach of contract, bad faith and loss of consortium.  Id.  The suit was subsequently removed by Defendant to this Court on March 31, 2014.  (See Not. of Removal (Doc. 1.))

Plaintiffs' bad faith claim is brought pursuant to Pennsylvania statute, 42 Pa. C.S. § 8371, which they contend Defendant violated in handling Plaintiff's UIM claim by:

> (a.) failing objectively and fairly to investigate and evaluate Plaintiff's claim by not confirming the documentation supplied by Plaintiff to Defendant; (b.) failing to adopt or implement reasonable standards in evaluating Plaintiff's claim; (c.) acting unreasonably and unfairly in response to Plaintiff's claim; (d.) not attempting in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's claim in which the Defendant's liability under the policy had become reasonably clear; (e.) subordinating the interests of its insured to its own financial interests; (f.) failing to promptly offer reasonable payment to the Plaintiff; (g.) violating the fiduciary duty owed to the Plaintiff; (h.) acting unreasonably and unfairly by withholding underinsured motorist benefits justly due and owing to the Plaintiff; (i.) failing to make an honest, intelligent and objective settlement offer to Plaintiff; (j.) causing Plaintiff to expend money on the presentation of his claim; and (k.) causing the Plaintiff to bear the stress and anxiety associated with litigation.

Compl. ¶ 31.

On October 21, 2014, Defendant filed the instant Motion for Partial Summary Judgment.  In this Motion, Defendant seeks dismissal of Plaintiffs' bad faith claim on its belief that "the record compiled during discovery in this case establishes that First Liberty acted with a

---

[1] This number includes the $15,000 paid to Plaintiffs by the tortfeasor's insurance, which acts as a credit.  Thus, the total valuation of Plaintiff's claim, as evidenced by the offer, was $49,000 ($34,000 + $15,000).

[2] The parties disagree over whether a counter-offer was made by Plaintiffs.

reasonable basis at all times in the handling of Plaintiff's UIM claims." (Def.'s Mot. for Partial Summ. J. at 12.) Thus, Defendant argues that "there is no clear and convincing evidence of bad faith conduct on the part of Defendant." (Id. at 13.)

In a Response in Opposition filed on November 10, 2014, Plaintiffs refute Defendant's argument, and assert that Defendant failed to "reasonably and fairly evaluate Mr. Insetta's injuries." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. at 6.) Thus, Plaintiffs contend that Defendant acted in bad faith by offering only $34,000 in light of the economic and medical documentation relating to Plaintiff's injuries. (Id.)

It is evident from the Response that Plaintiffs' bad faith claim relies upon the following arguments. First, Plaintiffs assert that the low figure offered by Defendant for his injuries is indicative of bad faith on the part of Defendant. (Id. at 8.) Second, Plaintiffs contend that Defendant's reliance on the findings of Richard Bennett, M.D., ("Dr. Bennett") as to Plaintiff's injuries exhibits that Defendant acted only in a self-interested fashion.[3] (Id. at 8-10.) Third, Plaintiffs point to several alleged facts regarding Defendant's claims adjuster, Ms. Palmer, which Plaintiffs argue indicate that she did not engage in a good faith review of his injury. (Id. at 11.) These include: (1) Ms. Palmer's failure to review the Plaintiff's file before her deposition; (2) the fact that Ms. Palmer did not have the authority to settle claims for more than $40,000 without further authorization; (3) Ms. Palmer's failure to consult a physician as to Plaintiff's injuries or to have a records review done by a physician; and, (4) Ms. Palmer's inability to answer certain questions relating to the computation of Plaintiff's injury claim. (Id. at 11-14.) On November 24, 2014, Defendant filed a Reply repudiating these contentions. (See Def.'s Reply.)

---

[3] Dr. Bennett, a neurologist, was an Independent Medical Examiner hired by Defendant after the initiation of the suit to evaluate Plaintiff's injuries.

4

II.     STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12

(E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

**III.    DISCUSSION**

Since this matter comes before the Court on diversity grounds, we must apply state law, which in this case is the law of the Commonwealth of Pennsylvania. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). Count II of the Complaint alleges a claim for bad faith against Defendant. Compl. ¶ 31. Pennsylvania law allows for recovery for an insurance company's bad faith towards the insured in the form of: (1) an award of interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) an award of punitive damages against the insurer; and/or (3) assess court costs and attorney fees against the insurer. 42 Pa. C.S. § 8371.

The Pennsylvania Supreme Court has described "bad faith" as concerning "the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged . . . its obligation to pay for a loss in the first party claim context." Toy v. Metro. Life Insur. Co., 593 Pa. 20, 41 (Pa. 2007). In Terletsky v. Prudential Prop. and Cas. Insur. Co., 437 Pa. Super. 108 (1994), the Superior Court of Pennsylvania asserted that bad faith by an insurer is:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

6

Terletsky, 649 A.3d at 688.

The United States Court of Appeals for the Third Circuit ("Third Circuit") adopted the Terletsky Court's two part-test for determining bad faith under § 8371. See Klinger v. State Farm Mut. Auto. Insur. Co., 115 F.3d 230, 233 (3d Cir. 1997). Utilizing this test, a finding of bad faith requires that Plaintiffs demonstrate by clear and convincing evidence both of the following elements: (1) that Defendant lacked a reasonable basis for denying benefits; and (2) that Defendant knew or recklessly disregarded its lack of reasonable basis. Id. (citing Terletsky, 649 A.3d at 688). Thus, a finding by the Court that Defendant acted with a reasonable basis in handling Plaintiffs' claim destroys an allegation of bad faith. Id. However, Plaintiffs have shown clear and convincing evidence where "the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant acted in bad faith." Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999). Overall, "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis á vis* the insured." Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. 2006).

In consideration of the record before this Court and the arguments raised by Plaintiffs, the Court finds that Plaintiffs cannot prove by clear and convincing evidence that Defendant lacked a reasonable basis for denying the full amount of the UIM policy and making an offer of $34,000 to Plaintiffs. Klinger, 115 F.3d at 233. Here, Plaintiffs' bad faith claim arises from a disagreement over the damages suffered by Plaintiff, and is of a type that "occurs routinely in the processing of an insurance claim." Johnson v. Progressive Ins. Co., 987 A.2d 781, 785 (Pa. Super. 2009). In such situations, an arguably low offer is not indicative of bad faith because "a low but reasonable estimate of an insured's damages" by an insurer does not constitute an actionable bad faith claim under § 8371. Id. (citing Condio, 899 A.2d at 1142); see also Smith

7

v. State Farm Mut. Auto. Insur. Co., No. 11-7589, 2012 WL 508445 at *4 (E.D. Pa. Feb. 16, 2012) (denying a bad faith claim in an automobile accident where the facts showed only a dispute over the amount of damages suffered, but failed to demonstrate delay, a frivolous refusal to pay or a failure to communicate with the plaintiff).

Plaintiffs have failed to show by clear and convincing evidence that the valuation placed on Plaintiff's injuries by Defendant was unreasonable. As Plaintiffs stated "whether or not a particular offer . . . is fair and reasonable depends on the nature and extent of one's injuries." (Pls.' Memo. of Law in Opp'n to Def.'s Mot. for Part. Summ. J., 7.) It is Plaintiffs' contention that Defendant's valuation was so low that the offer cannot be deemed to be "fair or reasonable."[4] (Id. at 7.) However, Plaintiffs fail to produce any evidence which "is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation" to support this argument. Bostick, 56 F. Supp. 2d at 587. In fact, the medical evaluation of Plaintiff's injuries conducted by Dr. Bennett supports Defendant's valuation of the claim. (See Def.'s Mot. for Part. Summ. J., Ex. F (Report of Dr. Bennett), 5.) Dr. Bennett concluded that there was "no evidence to support a diagnosis of cerebral concussion/post-concussion syndrome or exacerbation of bilateral carpal tunnel syndrome." (Id.)

Seeking to discredit the findings of Dr. Bennett, Plaintiffs assert that Defendant's reliance on them exhibits that Defendant acted only in a self-interested fashion. (Pls.' Memo. in Opp'n to Def.'s Mot. for Part. Summ. J., 8.) The record shows that there is stark disagreement between the medical opinions cited by the respective parties. Plaintiffs' argument attempts to eliminate Dr. Bennett's conclusions from the reasonableness calculation while filling the void

---

[4] In this case, although the parties disagree as to the exact amount Defendant is required to pay in lost wages, Plaintiffs assert that, under the settlement offer, the amount payable for Plaintiff's injuries was either $2,000 or $11,418 depending on the lost wages calculation. (Pls.' Memo. in Opp'n to Def.'s Mot. for Part. Summ. J., 8.)

with medical opinions favorable to their cause.  However, Defendant is "under no obligation to accept [the determinations of plaintiff's treating physicians] at face value to evaluate [plaintiff's] claim in good faith."  Richardson v. Un. Fin. Cas. Co., No. 11-7688, 2013 WL 2357519, at *9 (E.D. Pa. May 30, 2013) (quoting Mann v. UNUM Life Ins. Co. of Am., No. 02-1346, 2003 WL 22917545, at *9 (E.D. Pa. Nov. 25, 2003)).  "Rather to recover under a bad faith claim, Plaintiffs must show that Defendant did not have a reasonable basis for denying benefits under the policy and recklessly disregarded its lack of a reasonable basis."  Id.  Plaintiffs have failed to make any such showing.

      The Court's attention now turns to the process by which Defendant reached the determination to deny Plaintiffs the full claim value.  An insurance company establishes the requisite reasonable basis to defeat a bad faith claim where it undertakes "a substantial and thorough investigation of an insurance claim, which forms the basis of its refusal to make or continue making benefit payments."  Richardson, 2013 WL 2357519, at *8 (quoting Wedemeyer v. U.S. Life Insur. Co. in City of N.Y., No. 05-6263, 2007 WL 710290, at * 9 (E.D. Pa. Mar. 6, 2007)).  This does not require that the insurance company demonstrate "that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion.  Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."  Mann, 2003 WL 22917545, at *7.

      The claim review process in this case was undertaken by Ms. Palmer, an employee of Defendant, who has forty-two years of experience as a claims adjuster.  (Def.'s Mot. for Part. Summ. J. (Ex. D - Palmer Dep. 16:19, Aug. 15, 2014.))  According to her, UIM claims are evaluated and valued based upon medical records and any records from a claimant's employer(s)

regarding time off for disability.  (Id. at 23:23.)  Here, Ms. Palmer testified that, "[t]hrough my experience, I was able to read these records, look at his treatment.  And based on what the records said, what his doctors said, and what his treatment was, I was able to complete an evaluation of the claim."  (Id. at 76:15.)

Plaintiffs attack the thoroughness of Defendant's investigation by asserting that, since Ms. Palmer neglected to consult a physician or have a records review done by any physician as to Plaintiff's injuries, she did not "objectively, fairly and reasonably" evaluate his claim.  (Pls.' Memo. in Opp'n to Def.'s Mot. for Part. Summ. J., 12.)  However, Plaintiffs' argument is without any legal support, and refuted by the testimony of Ms. Palmer, who stated that such consultation was unnecessary due to the "pretty straightforward" nature of the case with the injuries and treatments being well described in the medical records provided by Plaintiffs.  (Palmer Dep. 74:22.)  Overall, the record supports a finding that Ms. Palmer undertook a "substantial and thorough investigation" into Plaintiffs' UIM claim, which in turn provides a reasonable basis for Defendant's decision.  Richardson, 2013 WL 2357519, at *8 (quoting Wedemeyer, 2007 WL 710290, at * 9).

Finally, we reject Plaintiffs' contentions that Ms. Palmer did not take Plaintiff's claim seriously and that her ability to settle claims only up to $40,000 were indicative of bad faith as conclusory and legally unsupported.  (Pls.' Memo. in Opp'n to Def.'s Mot. for Part. Summ. J., 11.)

**IV.  CONCLUSION**

In consideration of the factual record before the Court, we hold that no reasonable fact-finder could discern by clear and convincing evidence that Defendant acted in bad faith.  On the contrary, the Court holds that the facts indicate that Defendant acted with a reasonable basis in denying the full UIM coverage amount, and offering a sum of $34,000.  Accordingly, Defendant's Motion for Partial Summary Judgment is granted, and Plaintiffs' bad faith claim is dismissed.

An appropriate Order follows.